IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH BRUCE,                                    :

        Plaintiff,                          :

                                       Case No. 3:03cv464

        vs.                                 :

                                JUDGE WALTER HERBERT RICE

OFFICE DEPOT, INC.,                          :

        Defendant.                          :

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #15); JUDGMENT TO BE ENTERED IN
FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION
ENTRY

---

Plaintiff Joseph Bruce ("Plaintiff" or "Bruce") was hired by the Defendant's predecessor, J. A. Kindel Company, in 1991. After Defendant had purchased J. A. Kindel in 1994, it hired Plaintiff as an account manager in its Dayton office.[1] Bruce remained employed by the Defendant until March, 2001, when he was discharged, allegedly because he had used his privileges as an employee to purchase merchandise for friends and associates at a substantial discount. The Plaintiff then brought suit in the Montgomery County Count of Common Pleas, from whence the

---

[1]Plaintiff's position as an account manager was an outside sales job.

Defendant has timely removed it on the basis of diversity of citizenship.[2]  See 28

U.S.C. §§ 1441 and 1332.  In his Complaint,[3] the Plaintiff has set forth four claims

for relief, to wit: age discrimination in violation of Chapter 4112 of the Ohio

Revised Code ("Chapter 4112"); intentional and negligent infliction of emotional

distress; breach of express and implied contract; and promissory estoppel.

This case is now before the Court on the Defendant's Motion for Summary

Judgment (Doc. #15).  As a means of analysis, the Court will initially set forth the

standards it must apply whenever it rules upon a motion for summary judgment,

following which it will turn to the parties' arguments in support of and in

opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991)

(The moving party has the "burden of showing that the pleadings, depositions,

answers to interrogatories, admissions and affidavits in the record, construed

favorably to the nonmoving party, do not raise a genuine issue of material fact for

---

[2]The current lawsuit is the refiling of an action which Plaintiff had voluntarily
dismissed without prejudice.

[3]A copy of that pleading is attached to Defendant's Notice of Removal (Doc. #1).

trial.") (quoting <u>Gutierrez v. Lynch</u>, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, <u>Liberty Lobby</u> and <u>Celotex</u> stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50).  <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  <u>See</u> <u>also</u> <u>Michigan Protection and Advocacy Service, Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  <u>Celotex Corp.</u>, 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment …."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings,

depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Defendant seeks summary judgment on all claims set forth by the Plaintiff in his Complaint. Bruce, in contrast, merely argues that the evidence raises a genuine issue of material fact on his claim of age discrimination in violation of state law.[4] As a means of analysis, the Court will briefly set forth its reasons for concluding that Defendant is entitled to summary judgment on Plaintiff's claims of intentional and negligent infliction of emotional distress, breach of express and implied

_____

[4]In his memorandum opposing the Defendant's request for summary judgment, Plaintiff states that the Court has not ruled upon his request for a one-month extension of time in which to conduct discovery. See Doc. #20 at 2. The Court sustained that motion, "nunc pro tunc," on January 26, 2005, granting Plaintiff a 30-day period ending January 17, 2005, in which to conduct discovery. Since the Plaintiff was not given notice that he could conduct discovery during the period in which he was permitted to do so, and, further, given that there is no indication that Defendant voluntarily provided discovery, the Court is compelled to conclude that, even though Plaintiff is technically incorrect when he says that the Court has not ruled upon his request for an extension of time in which to conduct discovery, the Plaintiff has not been afforded such an additional period of time. Nevertheless, the Court concludes that Defendant's Motion for Summary Judgment (Doc. #15) is ripe for a ruling, since the Plaintiff has not suggested that he cannot respond to the Defendant's motion without additional discovery. In addition, the Sixth Circuit has stressed that compliance with Rule 56(f) of the Federal Rules of Civil Procedure is mandatory, in order for a party to be given more time in which to conduct discovery before being required to respond to a motion for summary judgment. Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 627 (6th Cir. 2002). The Plaintiff has not complied with that Rule.

contract and promissory estoppel,[5] following which it will turn to the parties'
arguments pertaining to his age discrimination claim.

Defendant is entitled to summary judgment on Plaintiff's claims of breach of
express and implied contract and promissory estoppel, because he signed an
employment contract with Defendant, which provided that he was employed as an
at will employee and that he could be discharged at any time without cause.

Defendant is entitled to summary judgment on Plaintiff's claim of negligent
infliction of emotional distress, because Ohio courts have refused to recognize a
separate tort for the negligent infliction of emotional distress in the employment
setting.  See e.g., Peitsmeyer v. Jackson Twp. Bd. of Trustees, 2003 WL
21940713( Ohio App. 2003); Burton v. Memorial Operations Company of Ohio,
2001 WL 799696 (Ohio App. 2001); Powers v. Pinkerton, Inc., 2001 WL 60035
(Ohio App. 2001); Tschantz v. Ferguson, 97 Ohio App.3d 693, 647 N.E.2d 507
(1994); Strawser v. Wright, 80 Ohio App.3d 751, 610 N.E.2d 610 (1992);
Hatlestad v. Consol. Rail Corp., 75 Ohio App.3d 184, 598 N.E.2d 1302 (1991);
Hanly v. Riverside Methodist Hosp., 78 Ohio App.3d 73, 602 N.E.2d 1126 (1991).

The predicate of Plaintiff's claim of intentional infliction of emotional distress
is that the Defendant engaged in age discrimination by discharging him.  Given that
the Sixth Circuit held that an employee's discharge, even if based upon illegal
discrimination, does not rise to the level of extreme and outrageous conduct

--------

[5]In his memorandum in opposition to Defendant's request for summary judgment,
Plaintiff indicates that he is going to dismiss his claims for intentional and negligent
infliction of emotional distress, breach of express and implied contract and
promissory estoppel.  See Doc. #20 at 3 n. 1.  Since the Plaintiff has not yet
dismissed those claims, the Court must rule upon the Defendant's request for
summary judgment on same.

- **6** -

necessary to support a claim of intentional infliction of emotional distress under Ohio law (Godferdson v. Hess & Clark, Inc., 173 F.3d 365, 376 (6th Cir. 1999)), Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

The Defendant argues that it is entitled to summary judgment on Plaintiff's claim that his discharge constituted age discrimination in violation of Chapter 4112, because the evidence fails to raise a genuine issue of material fact on the fourth element of the prima facie case of discrimination and on pretext. As a means of analysis, the Court will initially set forth the unrefuted facts leading to that discharge, following which it will turn to the question of whether the evidence raises a genuine issue of material fact on the fourth element of the prima facie case. If it concludes that the evidence raises such a genuine issue of material fact, it will engage in the same analysis for pretext.

At the time of his discharge, the Plaintiff reported to Jeff Gagliardo ("Gagliardo"), Defendant's District Sales Manager, who, in turn, reported to Bill Maher ("Maher"), Defendant's Regional Sales Manager. In the early part half of 2001, Tonya Black ("Black"), an administrative manager employed by Defendant in Cincinnati, noticed that the Plaintiff had placed multiple orders for merchandise using his personal account, which, at his direction, had been delivered to him. In addition, Plaintiff had ordered that merchandise at a substantial discount. Since that activity was unusual in Black's experience, she turned the matter over to Defendant's Loss Prevention Office. Wes Bank ("Bank") an employee of Defendant assigned to that office investigated the matter. He met with Plaintiff, who admitted that he had used his personal account to purchase merchandise for, _inter_

alia, his friends and associates and that he had discounted those purchases far in excess of what was permitted by company policy.  Thereafter, Bank met with Gagliardo and Maher, who decided to discharge the Plaintiff for using his personal account to purchase merchandise for friends and associates, rather than for himself and family alone, and for taking excessive discounts, more than 10%, when making purchases for those individuals.

The Ohio Supreme Court has relied upon McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), when resolving state employment discrimination claims brought under Chapter 4112.  Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm., 66 Ohio St.2d 192, 196 421 N.E.2d 128 (1981).  See also, Little Forest Medical Ctr. of Akron v. Ohio Civ. Rights Comm., 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991).[6]  As a consequence, in order to avoid summary judgment, an employment discrimination plaintiff has the initial burden of demonstrating that the evidence raises genuine issues of material fact on the elements of his prima facie case of discrimination.  Bicudao v. Lexford Properties, Inc., 157 Ohio App.3d 509, 523, 812 N.E.2d 315, 326 (2004).

Herein, Defendant initially argues that it is entitled to summary judgment on Plaintiff's age discrimination claim, because the evidence fails to raise a genuine issue of material fact on the fourth element of his prima facie case of age discrimination.  Under Ohio law, that element requires a showing "either that [the plaintiff] was replaced by someone outside the protected class or that a

---

[6]Of course, a plaintiff can also establish his claim through direct evidence of discrimination.  Byrnes v. LCI Communication Holdings Co., 77 Ohio St.3d 125, 672 N.E.2d 145 (1996).  Herein, the Plaintiff does not argue that there is such direct evidence.

nonprotected similarly situated person was treated better."[7]  Id.  Accord, James v. Delphi Automotive Systems, 2004 WL 2307825 (Ohio App. 2004); Shepard v. Griffin Services, Inc., 2002 WL 940110 (Ohio App. 2002).  As a means of analysis, the Court will address the question of whether the Plaintiff was replaced by someone outside the protected class, before turning to the issue of whether such a person was treated more favorably than Bruce.

After Plaintiff had been discharged, the Defendant did not hire an additional account manager to replace him; rather, his duties were distributed among Defendant's remaining account managers.  In the Sixth Circuit, an employee is not replaced when his work is reassigned to other employees.  Grosjean v. First Energy Corp., 349 F.3d 332, 335-36 (6th Cir. 2003).  Nevertheless, the Plaintiff argues that he was replaced by Regina Graham ("Graham"), who was hired by the Defendant in late February, 2002, more than eleven months after the Plaintiff had been discharged.  The fact that Defendant hired another account manager more than eleven months after the Plaintiff had been discharged does not cause this Court to conclude that the evidence raises a genuine issue of material fact concerning the fourth element of Plaintiff's prima facie case of age discrimination.

---

[7]In Coryell v. Bank One Trust, Co., 101 Ohio St.3d 175, 803 N.E.2d 781 (2004), the Ohio Supreme Court adopted the altered version of the fourth element of the prima facie case, adopted for use in federal age discrimination cases by the United States Supreme Court in O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996).  Under that altered version, the plaintiff can establish the fourth element by showing that he was replaced by someone "substantially younger" or that such a person was treated more favorably, even if the younger person is not outside the protected class (i.e., less than 40 years of age).  Herein, none of those identified by Plaintiff as being his replacement or as having been treated more favorably was over the age or 40.  Therefore, the altered version of the fourth element of the prima facie test does not affect this dispute.

In Lilly v. BDM Corp., 958 F.2d 746 (6th Cir.), cert. denied, 506 U.S. 940 (1992), the Sixth Circuit rejected a similar argument.  Therein, the plaintiff contended that he had been discriminated against on the basis of his age when he was discharged, and argued that he was replaced by a younger person when the defendant hired a 29-year old nine months after the plaintiff had been terminated.  Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact concerning the question of whether the Plaintiff was replaced.

Of course, a plaintiff may also establish the fourth element of the prima facie case by showing that there is a genuine issue of material fact on the question of whether someone under the age of 40 was treated more favorably than he.  The Plaintiff points to a number of such individuals, which the Court will discuss in the order in which he has presented them.  However, before engaging in that analysis, the Court will briefly review the applicable legal standards.

In Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992), the Sixth Circuit indicated that "to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated in all respects."  Id. at 583 (emphasis in the original).  In Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344 (6th Cir. 1998), the Sixth Circuit elaborated upon Mitchell:

> We explained in Mitchell that when the plaintiff lacks direct evidence of discrimination, "the plaintiff must show that the 'comparables' are similarly-situated in all respects," absent other circumstantial or statistical evidence supporting an inference of discrimination.  Id. at 583.  Although this statement appears to invite a comparison between the employment status of the plaintiff and other employees in every single aspect of their employment, Mitchell has not been so narrowly construed.  In Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796 (6th Cir. 1994), this court explained that the plaintiff was simply "required to prove that all of the

relevant aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation." Id. at 802 (emphasis added); see also Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing Mitchell in support of the proposition that "[t]o make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects" (emphasis added)); Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C.Cir. 1995) (quoting Pierce); Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir. 1995) ("A disparate treatment claimant bears the burden of proving that she was subjected to different treatment than persons similarly situated in all relevant aspects." (quotation omitted)). Mitchell itself only relied on those factors relevant to the factual context in which the Mitchell case arose--an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment. We held that to be deemed "similarly-situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583. These factors generally are all relevant considerations in cases alleging differential disciplinary action. Cf. Pierce, 40 F.3d at 802 (explaining that the distinction in supervisory status between plaintiff and non-minority employee also accused of sexual harassment was relevant because company's liability under Title VII for sexual harassment could depend on employee's status). Courts should not assume, however, that the specific factors discussed in Mitchell are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly- situated;" rather, as this court has held in Pierce, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the relevant aspects." Pierce, 40 F.3d at 802 (emphasis added).

Id. at 352. Accord, Singfield v. Akron Metropolitan Housing Authority, 389 F.3d 555, 562 (6th Cir. 2004). Ohio courts have applied the standards set forth in Ercegovich and Mitchell, when determining whether the co-worker who was allegedly treated more favorably is a comparable. See e.g., Poppy v. Willoughby

- 11 -

Hills City Council, 2005 WL 1007234 (Ohio App. 2005); Koski v. Willowwood Care Ctr. of Brunswick, Inc., 158 Ohio App.3d 248, 814 N.E.2d 1235 (2004).

Plaintiff initially argues that Mark Ewald ("Ewald") was treated more favorably than he was.  According to Plaintiff, Ewald used his personal account to purchase merchandise from Defendant, which he ultimately was not able to pay for, resulting in Defendant losing a substantial amount when it wrote off that debt.  Ewald was not fired as a result of his actions in that regard.  Ewald is not a comparable, since there is no evidence that he purchased merchandise for friends and associates or that he took a discount in excess of 10%, all of which the Plaintiff did.

Plaintiff also argues that Anita Barrett ("Barrett") is a comparable.  She was the youngest account manager employed by Defendant at its Dayton location.  Plaintiff contends that the Defendant treated Barrett better, because she was given virtually all of the leads for new national accounts.  Barrett is not a comparable, because Plaintiff's age discrimination claim is predicated upon the assertion that he was discharged because of his age.  The Plaintiff does not allege that he was discriminated against on the basis of his age, because the Defendant provided better opportunities to younger account managers.  Moreover, the Plaintiff was not discharged because he was failing to produce sufficient sales.  Thus, Defendant's alleged favorable treatment of Barrett is not relevant to his age discrimination claim.

However, even if that alleged favorable treatment of Barrett was relevant, the Court would nevertheless conclude that it does not raise a genuine issue of material fact on the fourth element of Plaintiff's prima facie case of age

discrimination, since his assertions in his deposition concerning Barrett are conclusory.  See Williams v. Ford Motor Co., 187 F.3d 533, 544 (6th Cir. 1999) (noting that conclusory evidence does not demonstrate the existence of a genuine issue of material fact).  Although Plaintiff testified that Barrett had received all of the good leads, he was unable to identify those leads or how many such leads she had received.  Thus, his testimony in that regard is nothing more than conclusory and unsupported allegations which are rooted in speculation.

Plaintiff also contends that Brian Cross ("Cross") is a comparable.  Cross violated a company policy, but was not terminated.  Plaintiff, in contrast, did violate such a policy and was discharged.  Nevertheless, Cross is not a comparable, since his only violation of company policy was to arrive late at a staff meeting, which is not remotely comparable to using his personal account to purchase merchandise at greatly reduced prices for friends and associates.

Based upon the foregoing, the Court concludes that the evidence fails to raise a genuine issue of material fact on the fourth element of the Plaintiff's prima facie case of age discrimination in violation of Chapter 4112.[8]  Accordingly, it sustains the Defendant's Motion for Summary Judgment (Doc. #15) in its entirety. The Court directs that judgment be entered in favor of Defendant and against Plaintiff.

---

[8]Given the Court's conclusion in that regard, it is not necessary to address Defendant's argument that it is entitled to summary judgment, because the evidence fails to raise a genuine issue of material fact on the question of pretext.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

July 5, 2005

                                        /s/ Walter Herbert Rice
                              _____
                                  WALTER HERBERT RICE, JUDGE
                                 UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.